UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CEDRIC THOMPSON, <br><br> Plaintiff, <br><br> v. <br><br> MIAMI CORRECTIONAL, et al., <br><br> Defendants. | CAUSE NO. 3:24-CV-1016-CCB-SJF |

## **OPINION AND ORDER**

Cedric Thompson, a prisoner without a lawyer, filed a complaint under 42 U.S.C. § 1983. (ECF 1.) Pursuant to 28 U.S.C. § 1915A, the court must screen this pleading and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To survive dismissal, a complaint must contain sufficient factual matter to state a claim that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Thompson is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## **FACTS**

Thompson is incarcerated at Miami Correctional Facility ("MCF"). His complaint is difficult to decipher, but it can be discerned that he was attacked by other inmates in

October 2024. He claims a gang member "put a hit" on him for "snitching" on a fellow gang member. He warned a defendant he identifies as "DII Wise" that he was going to be attacked, but this individual "brushed it off." He also complained to an unidentified correctional lieutenant, whom he refers to only as "LT" (herein "John Doe Lieutenant"), working on either October 11 or October 12. He claims he told this individual he was going to be attacked, but the John Doe Lieutenant allegedly ignored his concerns, telling him he would be fine because the facility was on lockdown. A day or two later, he was attacked by four other inmates, who hit him in the head several times and threw urine and feces on him. Officers Warner and Harley (first names unknown) were allegedly paid by the gang to turn a blind eye while this was happening.

He saw Sergeant George and Sergeant Gray (first names unknown) after the attack, and even though he had a black eye and other visible injuries to his head, they did nothing to help him or obtain medical care for him. He claims he attempted suicide by trying to swallow a razor blade but identified persons he refers to as "they" did not help him because they wanted him to die. He was left in a cell with a head injury for days. Based on these events, he sues named and unidentified defendants seeking monetary damages and other relief.

## ANALYSIS

The Eighth Amendment imposes a duty on prison officials to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). However, "prisons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d

2

763, 777 (7th Cir. 2008). Therefore, a failure-to-protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). Instead, the plaintiff must allege that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010). To be held liable, a defendant must have "acted with the equivalent of criminal recklessness, in this context meaning they were actually aware of a substantial harm to [plaintiff's] health or safety, yet failed to take appropriate steps to protect him from the specific danger." *Klebanowski v. Sheahan*, 540 F.3d 633, 639-40 (7th Cir. 2008).

Giving Thompson the inferences to which he is entitled, he has alleged a plausible Eighth Amendment claim against DII Wise, Officer Warner, and Officer Harley. He claims that he alerted DII Wise to a specific threat to his safety, but this individual took no steps to help him. The other two defendants allegedly turned a blind eye while he was being attacked because they had been paid off by the gang. He will be permitted to proceed on a claim for damages against these defendants.

He also states a failure-to-protect claim against the John Doe Lieutenant, whom he warned about the attack shortly before it happened. It is permissible to sue a "placeholder defendant" in federal court, but as a practical matter an unnamed defendant cannot be served with process. *See Rodriguez v. McCloughen*, 49 F.4th 1120, 1121 (7th Cir. 2022). This defendant must be identified and served within the two-year statute of limitations period and the deadline specified in Federal Rule of Civil

3

Procedure 4(m). *Id.* The court has an obligation to assist Thompson in trying to identify and serve this defendant. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir. 1996); *Sellers v. United States*, 902 F.2d 598, 602 (7th Cir. 1990).

At present, Thompson has not provided enough information to allow the U.S. Marshals Service to identify and serve this defendant. *See Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995) (prisoner must furnish the Marshals Service "with information necessary to identify the defendants"); *Sellers v. United States*, 902 F.2d 598, 602 (7th Cir. 1990) ("The Marshal needs from the prisoner information sufficient to identify the guard ('John Doe No. 23' won't do)."). To proceed further against this defendant, he must provide additional identifying information, such as the officer's gender, physical description, first or last name, or any other information he has in his possession or can obtain. He should also attempt to narrow down the date, approximate time, and location of his interaction with this defendant. If he provides such information, this individual may be able to be identified from Indiana Department of Correction employment records.[1]

The Eighth Amendment also entitles inmates to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim for the denial of this right, a prisoner must allege (1) he had an objectively serious medical need and (2) the defendant acted with deliberate indifference to that medical need. *Id.* A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious

---

[1] To avoid any confusion, the court will issue a separate order informing Thompson exactly what he must do to proceed further against this defendant.

4

even a lay person would recognize as needing medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotation marks omitted).

Giving Thompson the inferences to which he is entitled, he alleges a plausible denial of medical care claim against Sergeant George and Officer Gray. Specifically, he claims he had visible injuries to his head after the attack, but they did nothing to help him and instead left him in his cell for days with a head injury. He will be permitted to proceed further on a claim for the denial of medical care against these defendants.

Thompson lists a number of other individuals as defendants in the caption: "Nurses," "Ms. S," "Second Shift," "C.O. Juniper," and "Mr. Angle." However, as far as the court can discern, he does not mention these individuals in the narrative section of the complaint.[2] Liability under 42 U.S.C. § 1983 is based on personal responsibility, and these individuals cannot be held liable for the "misdeeds" of other prison staff. *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). He has not provided sufficient factual content

---

[2] He mentions a group identified as "they" in connection with his suicide attempt, but allegations about an unidentified group of defendants are insufficient to state a claim under federal pleading standards. *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (allegations that referred to "defendants" collectively without connecting specific defendants to specific acts were insufficient under federal pleading standards); *see also Henderson v. Wall*, No. 20-1455, 2021 WL 5102915, at *1 (7th Cir. Nov. 3, 2021) ("[B]y making allegations about large, indeterminate groups of defendants, [the plaintiff] deprived them all of proper notice of what they were accused of doing.").

for the court to plausibly infer that any of these defendants personally violated his constitutional rights. They will be dismissed.

He also names "Miami Correctional" as a defendant, by which he appears to mean the prison itself. The prison is not a viable defendant because it is a building, not a person or policy-making body that can be sued for constitutional violations. *Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012).

He also sues an "unknown inmate," apparently referring to one of the inmates who attacked him. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *L.P. v. Marian Catholic High Sch.*, 852 F.3d 690, 696 (7th Cir. 2017). There is no indication from the complaint that the inmate he refers to was acting under color of state law at the time of this incident. To the extent he is trying to initiate federal criminal charges against the inmate, he has no authority to do so as a private citizen. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). This claim will be dismissed.

Thompson's complaint can also be read to allege that he is currently in danger of being attacked again by gang members. The Warden of MCF has both the authority and the responsibility to ensure that inmates at his facility are protected from harm posed by other inmates as required by the Eighth Amendment. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). The Warden will be added as a defendant and Thompson will be permitted to proceed on an Eighth Amendment claim against the Warden in his

official capacity for injunctive relief related to his ongoing need for protection from other inmates.

## MOTION FOR PRELIMINARY INJUNCTION

Thompson recently sent the court a letter in which he states that he was raped by his cellmate and that correctional officers allowed other inmates to beat him. (ECF 4.) He did not mention being raped in his complaint, and it is unclear if this was part of the same attack he described in his complaint. Regardless, he expresses current concerns about his safety and fears he will be attacked again if he is not moved. Giving his letter liberal construction, the court will construe it as a motion for a preliminary injunction.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

On the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). In assessing the merits, the court does not simply "accept [the plaintiff's] allegations as true" or "give him the benefit of all

reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the court must endeavor to assess the merits as "they are likely to be decided after more complete discovery and litigation." *Id.*

On the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Mandatory preliminary injunctions—"those requiring an affirmative act by the defendant" like the one sought by Thompson—are "cautiously viewed and sparingly issued." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Additionally, in the prison context, the court's ability to grant injunctive relief is limited. "[I]njunctive relief to remedy unconstitutional prison conditions must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citation and internal quotation marks omitted); *see also Rasho v. Jeffreys*, 22 F.4th 703, 711-13 (7th Cir. 2022) (outlining strict limitations on granting injunctive relief in correctional setting).

The court also must consider the Supreme Court's admonition that "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Prisoners do not have a constitutional right to the housing

assignment of their choice, and where best to house a prisoner is ordinarily a matter committed to the discretion of prison officials. *See Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996).

At present, the court only has Thompson's version of events, and it is somewhat difficult to discern exactly what he is claiming with respect to the present risk to his safety. In light of the deference owed to prison officials in the management of their facilities and the limitations on granting injunctive relief in the correctional setting, the court will order the Warden to respond before taking further action on Thompson's request for a preliminary injunction.

For these reasons, the court:

(1) **DIRECTS** the clerk to add the Warden of Miami Correctional Facility as a defendant;

(2) **DIRECTS** the clerk to redesignate plaintiff's letter (ECF 4) as a motion for preliminary injunction;

(3) **DIRECTS** the clerk to correct the docket to change the name of defendant "LT" to "John Doe Lieutenant";

(4) **GRANTS** the plaintiff leave to proceed against DII Wise, Officer Warner, Officer Harley (first names unknown), and John Doe Lieutenant in their personal capacity for money damages for failing to protect him from being attacked by other inmates in October 2024 in violation of the Eighth Amendment;

9

(5) **GRANTS** the plaintiff leave to proceed against Sergeant Gray and Sergeant George (first names unknown) in their personal capacity for money damages for failing to obtain medical care for him after the attack in violation of the Eighth Amendment;

(6) **GRANTS** the plaintiff leave to proceed against the Warden of Miami Correctional Facility in his official capacity for injunctive relief related to the plaintiff's ongoing need for protection from other inmates at that facility;

(7) **DISMISSES** all other claims;

(8) **DISMISSES** Miami Correctional, Ms. S., Angle, Nurses, Second Shift, Juniper, and Unknown Inmate as defendants;

(9) **DIRECTS** the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) the Warden of Miami Correctional Facility by email to the Indiana Department of Correction with a copy of this order, the complaint (ECF 1), and the motion for a preliminary injunction (ECF 4) pursuant to 28 U.S.C. § 1915(d);

(10) **DIRECTS** the clerk to fax or email a copy of the same documents to the Warden of Miami Correctional Facility at Miami Correctional Facility;

(11) **DIRECTS** the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) DII Wise, Officer Warner, Officer Harley, Sergeant Gray, and Sergeant George (first names unknown) at the Indiana Department of Correction and to send them a copy of this order and the complaint (ECF 1) pursuant to 28 U.S.C. § 1915(d);

(12) **ORDERS** the Indiana Department of Correction to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent such information is available;

(13) **ORDERS** the Warden to file and serve a response to the plaintiff's motion for a preliminary injunction no later than **March 14, 2025**, with supporting documentation and declarations from staff as necessary, addressing his current need for protection from other inmates and, if applicable, the steps being taken to protect him from harm; and

(14) **ORDERS** the Warden, DII Wise, Officer Warner, Officer Harley, Officer Gray, and Sergeant George to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on January 23, 2025.

      /s/ *Cristal C. Brisco*
      CRISTAL C. BRISCO, JUDGE
      UNITED STATES DISTRICT COURT